242 

IN THE MATTER OF THE ESTATE OF EMILE PFIZER, DECEASED.

ALBERT A. TEETER AND NATIONAL CITY BANK OF NEW YORK, TRUSTEES UNDER THE LAST WILL AND TESTAMENT OF EMILE PFIZER, DECEASED, PLAINTIFFS, v. LADY HELEN DUNCAN, ET AL., DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided January 19, 1954.

See also 6 *N. J.* 223, 78 *A.* 2d 80.

244

246

*Mr. Frank J. Valgenti*, attorney for plaintiffs.

*Messrs. Hopkins, Vorburger & Dickson*, attorneys for the City of New York, on behalf of Gouverneur Hospital and Bellevue Hospital (Tuberculosis Clinic), two hospitals owned, operated and maintained by it through its Department of Hospitals, and Association for the Aid of Crippled Children.

*Messrs. Soons & Durand*, attorneys for Helen Duncan, Alice Bachofen Von Echt, individually and as co-administratrix of the estate of Gustavus Pfizer, deceased, and City Bank Farmers Trust Company, as co-administrator of the estate of Gustavus Pfizer, deceased.

*Mr. Ronald A. Gulick*, attorney for New York Association for the Blind, the Presbyterian Hospital in the City of New York, New York Orthopedic Dispensary and Hospital and Neurological Institute of New York.

*Messrs. Wingate & Cullen*, attorneys for Marien-Heim of Brooklyn.

*Messrs. Shearman & Sterling & Wright*, attorneys for the Roosevelt Hospital.

*Messrs. Toner, Crowley, Woelper & Vanderbilt*, attorneys for New York University, successor by merger and consolida-

tion to New York Post Graduate Medical School and Hospital.

*Mr. Thornton C. Land,* attorney for Beekman-Downtown Hospital (formerly known as Broad Street Hospital).

EWART, J. S. C. The complaint in this suit, as amended in the pretrial order and by orders entered October 29, 1952 and August 21, 1953, is in two counts. The first count seeks a construction of articles 7, 8, 9 and 10 of testator's will, which articles read as follows:

"SEVENTH: I give and bequeath One hundred thousand ($100,000) Dollars, to my Trustees hereinafter named, IN TRUST, NEVERTHELESS, for the uses and purposes following:

(1) To invest and keep the same invested and to pay or apply the net income therefrom (after payment of all necessary or proper costs and expenses of the Trust) to or for the benefit of NANA E. PFIZER, widow of my late brother, Charles Pfizer, for and during her life.

(2) Upon the death of said Nana E. Pfizer, to distribute the principal of said fund as it shall then exist (or upon my death if said Nana E. Pfizer shall have failed to survive me, to distribute the said sum of One hundred thousand ($100,000) Dollars) among the corporations entitled to receive the principal of the funds created under Clause NINTH hereof on the termination of the trusts therein mentioned and described and in the same proportions in which said corporations are entitled pursuant to Clause TENTH to participate in the distribution of said principal of such funds.

EIGHTH: I give and bequeath One hundred thousand ($100,000) Dollars, to my Trustees hereinafter named, IN TRUST, NEVERTHELESS, for the uses and purposes following:

(1) To invest and to keep the same invested and to pay or apply the net income therefrom (after payment of all necessary or proper costs and expenses of the Trust) to or for the benefit of my brother, GUSTAVUS PFIZER, for and during his life.

(2) Upon the death of my said brother, to divide the principal of the fund as it shall then exist (or upon my death, if my said brother shall have failed to survive me, to divide said sum of One hundred thousand ($100,000) Dollars, above mentioned) into two equal shares or parts; to pay the net income from one of said parts, to my sister, HELEN DUNCAN, and to pay the net income from the other of said parts, to my sister, ALICE BACHOFEN VON ECHT, for and during their respective lives, and upon the death of each of them, to distribute the principal of the fund held for her benefit among the corporations entitled to receive the principal of the funds created

under Clause NINTH hereof on the termination of the trusts therein mentioned and described and in the same proportions in which said corporations are entitled, pursuant to Clause TENTH, to participate in the distribution of said principal of such funds.

If either of my said sisters shall not be living at the date when such trust fund would have been established for her benefit as hereinabove specified if she had survived until that time, the moneys and/or property which would in that event have constituted said fund, shall be distributed as soon as may be practicable and convenient thereafter, among such corporations and in such proportions as provided in the last preceding paragraph hereof.

NINTH: I direct my Executors to divide all the rest, residue and remainder of my property and estate, both real and personal, of whatsoever kind or nature and wheresoever situated, into three equal shares or parts and to set over the same to themselves as Trustees and to hold and administer the said funds so created, IN TRUST, for the uses and purposes hereinafter specified, to wit:

(A) As to the first of said three funds, to invest and to keep the same invested and to pay or apply the net income therefrom (after payment of all necessary or proper costs and expenses of the trust) to or for the benefit of my brother, GUSTAVUS PFIZER, for and during his life.

(B) As to the second of said three funds, to invest and to keep the same invested and to pay or apply the net income therefrom (after payment of all necessary or proper costs and expenses of the trust) to or for the benefit of my sister, HELEN DUNCAN, for and during her life.

(C) As to the third and last of said three funds, to invest and to keep the same invested and to pay or apply the net income therefrom (after payment of all necessary or proper costs and expenses of the trust) to or for the benefit of my sister, ALICE BACHOFEN VON ECHT, for and during her life.

TENTH: On the termination of each of the trusts mentioned in Subdivisions (A), (B) and (C) of Clause NINTH above, I direct that the moneys and/or property then constituting the principal of the fund shall be distributed among the corporations named below, in equal shares:

NEW YORK ASSOCIATION FOR THE BLIND, ASSOCIATION FOR THE AID OF CRIPPLED CHILDREN, BROAD STREET HOSPITAL, ROOSEVELT HOSPITAL, GOUVERNEUR HOSPITAL, NEW YORK ORTHOPEDIC DISPENSARY AND HOSPITAL, MARIEN-HEIM OF BROOKLYN, BELLEVUE HOSPITAL (for its Tuberculosis Clinic), NEW YORK POST GRADUATE MEDICAL SCHOOL AND HOSPITAL (for its Skin and Cancer Unit), NEUROLOGICAL INSTITUTE OF NEW YORK (for its Treatment Clinics).

In case any of the three persons named as beneficiaries of the trusts created in Clause NINTH above, shall fail to survive me, then upon my death, the moneys and/or property which would have been set over to the fund which would have been established for the

benefit of said person pursuant to the terms hereof, if living, shall be distributed among the corporations mentioned and described in the last preceding paragraph hereof and in the proportions therein specified."

The second count seeks approval of the plaintiffs' account as trustees under paragraph "NINTH (A)" of testator's will, together with the allowance of commissions to the trustees and of counsel fees.

Emile Pfizer died a resident of Gladstone in Somerset County, July 19, 1941, leaving a last will and testament dated February 10, 1939 and a codicil thereto dated March 22, 1941, both of which were duly probated before the Surrogate of Somerset County on July 31, 1941.

Concerning the beneficiaries named in his will and with whom we have to deal in this suit, the following facts and information are pertinent:

(1) Testator's sister-in-law Nana E. Pfizer, mentioned in article 7 of the will, died February 18, 1953.

(2) Testator's brother Gustavus Pfizer, mentioned in articles 8 and 9 of the will, died March 30, 1944.

(3) Testator's sister Helen Duncan, mentioned in articles 4, 8 and 9 of the will, died March 15, 1953.

(4) Testator's sister Alice Bachofen Von Echt, mentioned in articles 4, 8 and 9 of the will, is still living.

(5) Of the ten organizations mentioned in article 10 of the will and referred to by testator as *"the corporations named below,"* it is conceded by the parties that Gouverneur Hospital and Bellevue Hospital are not and never were bodies corporate, but are institutions owned and operated by the City of New York. The other eight organizations mentioned in article 10 of the will were all corporations of the State of New York.

(6) Presbyterian Hospital in the City of New York, a corporation of the State of New York, is successor by consolidation to Neurological Institute of New York, body corporate, and also to New York Orthopaedic Dispensary and Hospital, body corporate, and it has been stipulated by the parties that the judgment to be entered in this cause shall

direct payment to the Presbyterian Hospital of New York, body corporate, of any shares bequeathed or devised by testator's will to the said Neurological Institute of New York and to the New York Orthopaedic Dispensary and Hospital, two of the organizations mentioned in article 10 of the will.

(7) New York Post Graduate Medical School and Hospital is one of the ten beneficiaries named in article 10 of the will. The parties have stipulated that the judgment to be entered in this cause shall direct the payment of the share of any bequests or devises made by the will to New York Post Graduate Medical School and Hospital to New York University, successor by merger and consolidation to the said New York Post Graduate Medical School and Hospital.

(8) Bellevue Hospital, one of the beneficiaries named in Article 10 of the will, is one of the largest hospitals in the country. It is not incorporated but is operated as an activity of the City of New York in accordance with the charter of the City of New York and has been in existence since some time prior to 1811 and has been operated, during all the period of its existence, at its present location along the East River from 23rd to 28th Streets, east of Second Avenue, in the Borough of Manhattan. It is a general hospital for the treatment of all types of cases, other than contagious diseases; and has a bed capacity of 3,064, included in which total are 499 beds used in connection with the tuberculosis clinic operated by said hospital.

(9) Gouverneur Hospital, one of the beneficiaries named in article 10 of the will, is not incorporated but likewise is operated as an activity of the City of New York pursuant to the charter of the city. It was opened and has been in existence since 1885. It is a general hospital situate on Gouverneur Slip in the Borough of Manhattan and has a capacity of 770 beds.

Both of the two hospitals above named are owned, operated and maintained by the City of New York.

It has been conceded by the parties that there are no other hospitals bearing the names Bellevue Hospital or Gouverneur Hospital.

The parties concede that the testator Emile Pfizer had been a patient at the Roosevelt Hospital, one of the beneficiaries named in article 10 of his will, at some time during the last few years of his life.

There are no proofs that testator was ever a patient at either Bellevue or Gouverneur Hospital.

The parties concede that the New York income tax returns of the late Emile Pfizer for the calendar years 1936 to 1940, both inclusive, reveal no deductions claimed for any gifts or contributions to hospitals or other charities. And there is no proof in the case that testator ever made gifts in his lifetime to or for the account of either Bellevue or Gouverneur Hospital.

The parties further concede that all money and funds used for the operation and maintenance of both Bellevue and Gouverneur Hospital have been appropriated by the city from general funds raised annually by taxation.

The City of New York represents, and no one has disputed the claim, that it has collected all legacies heretofore bequeathed to it by various persons (excepting the bequest under the Pfizer will), including some on behalf of its hospitals; that bequests and gifts are accepted by the city by specific resolution of its board of estimate in each instance; and that the city treasurer maintains a special account in which funds, including donations and legacies, are entered in its books of account as trust funds and are not commingled with general funds of the city but are used for the purposes specified by the donor or by the will.

The City of New York contends, and it does not seem to be disputed, that generally the services rendered by Bellevue and Gouverneur Hospital, including the tuberculosis clinic of the former, are rendered gratuitously as a public service because of the inability of the patients to pay for the same, although there are some cases in which the city does collect for such hospital services.

On May 3, 1948 the trustees paid $30,000 to Bellevue Hospital and another $30,000 to Gouverneur Hospital, charging $28,000 of the disbursement to *corpus* and $2,000 to income

in each case, as shown on pages 7 and 27 of the trustees' account and by the cancelled checks marked respectively Exhibits N–2 and N–3.

Decedent's sister Alice Bachofen Von Echt and the personal representatives of his deceased sister Helen Duncan and of his deceased brother Gustavus Pfizer, herein referred to as testator's next-of-kin, deny that either Bellevue Hospital or Gouverneur Hospital are entitled to take under the tenth article of testator's will and by their counterclaim against the plaintiffs and their cross-claim against the city, except to the $30,000 paid to each of those hospitals on account. All other parties to the suit concede that these two hospitals are entitled to take under the Pfizer will.

Testator's will was drawn by Attorney Samuel C. Worthen, now deceased, and his original will was witnessed by Attorney Worthen and by Martin J. Coughlin and Vincent W. Quinn. No proofs were adduced with respect to the preparation and execution of the will other than as appears by certified copy thereof admitted in evidence as Exhibit N–1. Nor were any proofs adduced respecting the reasons or motives which prompted the testator to make the disposition of his estate as set forth in his will and it is conceded that Mr. Albert A. Teeter, one of the trustees and parties plaintiff in this suit, has no knowledge on the subject.

The following additional facts and matters have been stipulated by the parties:

(a) That the defendant City of New York is a municipal corporation.

(b) That all of the organizations named in article 10 of decedent's will are entitled to take under the will excepting only Bellevue Hospital and Gouverneur Hospital. No stipulation is made concerning those two hospitals.

(c) That the account as filed by the trustees is correct and proper, subject only to the questions raised by the answer of the next-of-kin, including the counterclaim against the plaintiffs and the cross-claim against the City of New York, both of which deal with the payment of $30,000 on account

to each of the two hospitals in question, *viz.*, to Bellevue Hospital and to Gouverneur Hospital.

(d) That the following exhibits are admitted and marked:

Exhibit C–1, certified copy of resolution adopted by the Board of Estimate of the City of New York accepting, on behalf of Bellevue Hospital and Gouverneur Hospital, the bequests contained in the tenth clause of testator's will.

Exhibit N–1, certified copy of the last will and testament of Emile Pfizer dated February 10, 1939, and codicil thereto dated March 22, 1941.

Exhibit N–2, check of the trustees dated 5/3/48 to the order of Bellevue Hospital for $30,000, drawn on the National City Bank of New York and duly cashed.

Exhibit N–3, check of the trustees dated 5/3/48 to the order of Gouverneur Hospital for $30,000, drawn on the National City Bank of New York and duly cashed.

Exhibit N–4, mimeographed statements for each of the years 1936 to 1941, inclusive, showing the cost of maintaining and operating the Department of Hospitals in the City of New York for each of the years in question.

Exhibit N–5, copies of portions of the annual reports of the comptroller for the years 1936 to 1941, inclusive, setting forth the financial operations of trust accounts for each of the years in question.

(e) That the original charter of the City of New York as amended in 1906, or any part thereof, as well as the charter adopted and effective January 1, 1938 or any part thereof, may be referred to by any party and used as though the entire charter had been admitted in evidence, the next-of-kin reserving the right to object to the relevancy and materiality of such charter or any part thereof referred to.

(f) That the statutes and case law of the State of New York may be referred to by any party with the same force and effect as though such statute and case law had been proved in court by a member of the New York Bar at the trial of this action.

(g) That no application shall be made to the court for the allowance of commissions to the trustees or for the allow-

ance of counsel fees without proper notice in advance to counsel for all parties concerned in this suit.

The principal parties concerned in this suit are the testator's next-of-kin above mentioned and the City of New York. In their answer the next-of-kin contend that Emile Pfizer died intestate with respect to the shares bequeathed to Bellevue Hospital and Gouverneur Hospital; they counterclaim against the plaintiffs for the $60,000 paid by the plaintiff trustees to the two hospitals in question; and they also cross-claim against the defendant City of New York for the said $60,000, representing $30,000 paid by the trustees to Bellevue Hospital and a like sum paid by the trustees to Gouverneur Hospital.

In pretrial memoranda submitted by the next-of-kin and by the City of New York pursuant to *Rule* 3:16–43(*b*) (now *R. R.* 4:29–3), the respective positions of the contesting parties are stated substantially as follows:

The so-called next-of-kin, that is to say, testator's sister Alice Bachofen Von Echt and the personal representatives of his deceased sister Helen Duncan and of his deceased brother Gustavus Pfizer, contend:

1. That the testator Emile Pfizer died intestate as to the shares directed to be distributed to Bellevue Hospital and to Gouverneur Hospital by article 10 of the will; that neither of the said two hospitals are corporations as specified by the testator in article 10 of the will; that the shares bequeathed to the said two hospitals cannot be saved under the *cy pres* doctrine because the testator by his will did not indicate a general charitable purpose with a specific agency to effectuate that purpose, and that under a true construction of the will the testator did not intend these gifts to be made to the City of New York; and that the testator must have thought these two hospitals were private corporate hospitals as distinguished from municipal activities.

2. That the attempted gifts to Bellevue Hospital and to Gouverneur Hospital cannot be saved on the theory of misnomer; that the testator had no connection whatever with the two hospitals in question during his lifetime; and

that he could not have had in mind the City of New York as beneficiary when he named Bellevue Hospital and Gouverneur Hospital in article 10 of the will.

3. That under the law of the State of New York an unincorporated association is without capacity to receive a legacy and that New York law controls in that respect.

4. That the law of decedent's domicile, *viz.*, New Jersey, controls the question of whether or not the *cy pres* doctrine is applicable and whether or not the gift can be sustained on the theory of a misnomer.

The City of New York contends:

1. That describing Bellevue Hospital and Gouverneur Hospital by the names by which they are commonly known, instead of the correct corporate title of the City of New York, the municipal corporation which owns, operates and maintains them, is a mere misnomer and does not render the bequests to them void.

2. That the City of New York is authorized by common law and by statute to accept any gift or bequest of money or any other personal property or any donation made to a hospital operated by it to be applied, principal or income, or both, for the benefit of such hospital and to apply the same in accordance with the terms of the gift.

3. That both Bellevue Hospital and Gouverneur Hospital are engaged in the work of relieving the sick, a charitable work, and in the absence of express words to that effect, a legacy to them is taken by implication as intended to promote the work for which they were created.

4. That where a gift is made for charitable purposes to an organization which, although it is unincorporated, is a branch or subsidiary of a corporation, the courts of both New Jersey and New York will sustain the gift and hold the gift to be effective by awarding it to the corporation to be held by the corporation in trust for the purposes of the gift.

5. That the gifts contained in article 10 of testator's will to Bellevue Hospital and to Gouverneur Hospital, being by implication in trust for the charitable work of these organizations, if for any reason neither hospital nor the City of New

York may take the funds, then this court will not allow the trust to fail for want of a trustee but will itself designate a trustee to effectuate the same.

6. That any cause of action for an erroneous payment of a bequest vests in the fiduciary making the payment, *viz.*, in the plaintiff trustees, and not in the next-of-kin, and that the fiduciary alone may institute proceedings to recover the same.

7. That this court has no jurisdiction over a suit against the City of New York, a non-resident, to recover funds paid to such non-resident by mistake when the funds are no longer within the jurisdiction of the court, such action being purely an action *in personam*.

8. That if for any reason the bequests to Bellevue Hospital and to Gouverneur Hospital should fail, then the true construction of decedent's will shows that he did not intend to die intestate; that he had a general charitable purpose, to wit, to benefit the work of New York hospitals; and that the court may effectuate that purpose by application of the *cy pres* doctrine if necessary.

9. That inasmuch as the next-of-kin can in no way benefit from a failure of the bequest to Bellevue Hospital and Gouverneur Hospital, they have no legal status to file a cross-claim against the City of New York.

10. That all parties to this proceeding, other than the next-of-kin, concede the right of the two hospitals to take under the tenth clause of testator's will; that all of the parties to this suit, other than the next-of-kin, contend that if Bellevue Hospital and Gouverneur Hospital cannot take under decedent's will, still the decedent did not die intestate but that a proper construction of his will requires distribution of such shares to the remaining charities named in the tenth article of the will, or to their successor by merger or consolidation; and that this point has been expressly raised by the defendant City of New York both in its answer and by a motion to dismiss the cross-claim filed by the next-of-kin.

It appears from the proofs that the City of New York operates a large number of hospitals. During the years 1936 to 1941, both inclusive, the city operated and maintained a

total of 27 or 28 hospitals, and as shown by the official reports of the city the total expenditures for the maintenance and operation of these hospitals during the period mentioned ranged from a low of $21,129,242 in 1936 up to a maximum of $30,706,437 in 1941. And with respect to Bellevue hospital, the city's expenditures for the maintenance and operation of that hospital for the same period ranged from a low of $3,500,478 in 1936 to a maximum of $5,249,507 in 1941. And for Gouverneur Hospital, the city's expenditures for the maintenance and operation of that institution ranged from a low of $443,437 in 1936 to a maximum of $546,624 in 1941.

The present charter of the City of New York, adopted and effective January 1, 1938, contains, *inter alia,* the following provisions respecting the city's hospitals and their operation:

"§ 581. Department; commissioner.—There shall be a department of hospitals the head of which shall be the commissioner of hospitals who shall be appointed by the mayor.

✻ ✻ ✻ ✻ ✻ ✻ ✻ ✻

"§ 583. Jurisdiction of commissioner.—The commissioner shall:
"1. Maintain and operate all hospitals ✻ ✻ ✻ of the city for the care of sick, injured, aged or infirm persons, ✻ ✻ ✻ and over any other service maintained by the city for the care of sick, injured, aged or infirm persons as may be assigned to him by law. ✻ ✻ ✻

✻ ✻ ✻ ✻ ✻ ✻ ✻ ✻

"§ 587. Care and treatment of patients.—a. The hospitals or other institutions under the jurisdiction of the department shall be primarily for the care and treatment of the indigent poor of the city and for the protection of the public health * * *."

The New York statute pertaining to gifts, bequests or devises to a city reads as follows:

Section 20 of the General City Law of the State of New York. "Subject to the constitution and general laws of this state, every city is empowered:

✻ ✻ ✻ ✻ ✻ ✻ ✻ ✻

"3. To take by gift, grant, bequest or devise and to hold and administer real and personal property within and without the limits of the city, absolutely or in trust for any public or municipal purpose, upon such terms and conditions as may be prescribed by the grantor or donor and accepted by the city."

In view of the premises, including the provisions of the last will and testament of Emile Pfizer, deceased, I have reached the following conclusions:

In the first place, since the testator was domiciled in the State of New Jersey where his will was probated and the bequests in question are of personalty, the general rule is that questions concerning the validity and construction of the will and the validity of bequests therein contained are governed by the laws of this State and not by the laws of the State of New York where the residuary legatees are domiciled or have their *situs*. *Harrison v. Nixon*, 9 *Pet.* 483, 34 *U. S.* 483, 9 *L. Ed.* 201 (1835); *Nelson v. Potter*, 50 *N. J. L.* 324, 325 (*Sup. Ct.* 1888); *Rosenbaum v. Garrett*, 57 *N. J. Eq.* 186 (*Ch.* 1898); *Ryder v. Myers*, 113 *N. J. Eq.* 360 (*Ch.* 1933); *Bankers Trust Co. v. Bacot*, 6 *N. J.* 426 (1951); 1 *Jarman on Wills* 3; 2 *Beale, Conflict of Laws,* §§ 306.3 and 4 and § 308.1; *ReStatement, Conflict of Laws,* §§ 306 and 308; 4 *Page on Wills* (*Lifetime ed.*) § 1639; 11 *Am. Jur. Conflict of Laws,* §§ 173 and 174; 5 *N. J. Practice, Clapp on Wills and Administration,* § 104.

In *Harrison v. Nixon, supra*, Mr. Justice Story said:

"In regard to personalty in an especial manner, the law of the place of testator's domicile governs in the distribution thereof, and will govern in the interpretation of wills thereof; unless it is manifest that the testator had the laws of some other country in his own view * * *. In short, a will of personalty speaks according to the laws of the testator's domicile, where there are no other circumstances to control their application."

In *Bankers Trust Co. v. Bacot, supra*, our Supreme Court laid down the general rule that a testamentary trust of personalty is to be administered by the trustee in accordance with the law of the state of testator's domicile unless the will shows a manifest intention that the trust should be administered according to the laws of another state.

There are exceptions to the foregoing general rule. One exception is that where the testator's will expressly provides or manifests an intention that the law of some jurisdiction other than that of his domicile shall control the

administration of the estate or the construction of the will, such direction or manifestation of intention will be followed by the courts. *Harrison v. Nixon, supra; Rosenbaum v. Garrett, supra,* 57 *N. J. Eq.* at *pages* 191–192; *Bankers Trust Co. v. Bacot, supra.*

Another exception to the general rule is that while the capacity of a legatee to receive the legacy is ordinarily governed by the law of the domicile of the testator at his death, yet if the legatee be a foreign corporation it must have capacity to take by the law of the state of incorporation. 2 *Beale, Conflict of Laws,* § 306.3.

Neither of the exceptions are relevant or pertinent to the bequests contained in the will of the decedent Emile Pfizer.

Secondly, generally speaking a misnomer of a legatee will not be permitted to defeat a bequest where the person or corporation intended can be identified with certainty. And that is especially true respecting a bequest for charitable purposes. *Smith's Executrix v. First Presbyterian Church of Bloomsbury,* 26 *N. J. Eq.* 132 (*Ch.* 1875); *Van Nostrand v. Board of Domestic Missions of Reformed Church in America,* 59 *N. J. Eq.* 19 (*Ch.* 1899); *Caldwell National Bank v. Rickard,* 103 *N. J. Eq.* 516 (*Ch.* 1928); *First National Bank and Trust Company of Summit v. Board of Chosen Freeholders of Union County,* 123 *N. J. Eq.* 415 (*Ch.* 1938); *Guaranty Trust Co. of New York v. Catholic Charities, etc., of New York,* 141 *N. J. Eq.* 170 (*Ch.* 1948).

The tenth article of testator's will provided that upon the termination of the trusts set up by article 9 of the will, the monies or property then constituting the principal of the trust fund should be distributed *"among the corporations named below, in equal shares,"* following which the will designates ten organizations, included among which are Bellevue Hospital (for its tuberculosis clinic) and Gouverneur Hospital. It has been conceded by all parties that there never was such a corporation as Gouverneur Hospital or such a corporation as Bellevue Hospital; that neither hospital is a legal entity; but that both of the hospitals are agencies or instrumentalities owned and operated and sup-

ported and maintained by the City of New York. But it has also been stipulated that there are no other hospitals of the same names excepting the ones located in New York City and that both are large, well-known institutions having a long history of service to the poor, the ill and the afflicted.

In *Smith's Executrix v. First Presbyterian Church of Bloomsbury, supra,* testator's will contained bequests to certain boards of the Presbyterian Church in the United States of America, including the Board of Foreign Missions, the Board of Domestic or Home Missions, the Board of Education, the Board of Church Erection, the Board of Ministerial Relief, and the Board of Publication. The will failed to designate the corporate beneficiaries by their correct corporate titles but the bequests were held good nevertheless, the court finding that the descriptions contained in the will were sufficiently accurate to identify the intended legatees positively. The court said in part:

"The misnomer of the charities is not in any case such as to defeat the legacies. It is sufficient that the legatee be so designated as to be distinguished from every other person, * * *."

In *Van Nostrand v. Board of Domestic Missions of Reformed Church in America, supra,* the bequest was to "Domestic Missionary Society." The testator was held to have intended to designate the Board of Domestic Missions of the Reformed Church in America and the bequest was held good, the court holding that a gift to a corporation by a misnomer is good, especially if for a charitable purpose.

In *Caldwell National Bank v. Rickard, supra,* the court found that a bequest to "Memorial Home at Princess Bay, Staten Island" was good and intended for "Richmond Memorial Hospital" at Princess Bay, Staten Island. The court said that a misnomer of a legatee will not be permitted to defeat a bequest where the person or corporation intended can be identified with certainty. And in the same case, the court held that a bequest "to the home for aged persons situated at Ocean Grove, New Jersey, in which two of my friends recently died," was intended by the testator for the "Methodist

Episcopal Home for the Aged of New Jersey" located at Ocean Grove, and that the bequest was good to the institution last named.

*First National Bank and Trust Company of Summit v. Board of Chosen Freeholders of Union County, supra,* is a case closely parallel to the case at bar. In that case the bequest was to Bonnie Burn Sanatarium, Union County, New Jersey. In fact, no such legal entity existed. There was a Bonnie Burn Sanatarium established, owned and operated by the County of Union, and the court held that testatrix intended the bequest to go to the sanatarium in question, even though it was not a legal entity, and that the bequest should be paid to the County of Union, the body corporate owning and operating the hospital. The court said in part:

"It is established law that a misnomer of a legatee or devisee will not render the legacy or devise void if the legatee or devisee intended by the testator can be clearly ascertained either from the will itself or from extrinsic evidence, and the rule applies to a devise or bequest to a corporation, association, or society, as well as to an individual. The misnomer will not defeat the gift. * * * The bequest is, in effect, to the corporation owning the hospital, the County of Union."

■-9] In *Guaranty Trust Co. of New York v. Catholic Charities, supra,* testator died domiciled in New Jersey and by his will created two trust funds, one of $100,000 and the other of $50,000, with the income to be paid to certain named persons until their death or remarriage when the trusts were to terminate, upon the happening of which event the trustee was directed to divide the trust fund among certain named charitable organizations. The court found there were no legal entities bearing the titles used by the testator in designating the beneficiaries but that the testator designated the beneficiaries by their general and customary names rather than by their legal titles. However, the court was able to identify with reasonable certainty the beneficiaries intended by the testator and held the bequests good. In deciding that case the court repeated the following well established rules:

"It is the well established rule that where the name or description of the legatee is erroneous, and there is no reasonable doubt as to who was intended to be named or described, the misnomer will not defeat the bequest." (141 *N. J. Eq.* at *page* 172)

"Parol and extrinsic evidence is competent and admissible to reveal the situation and surroundings of the testator and the objects with which he was familiar and in which he exhibited an interest, not in an effort to show what he meant to say, but to show what he meant by what he did say." (141 *N. J. Eq.* at *page* 173)

"Initially I must heed the presumption against intestacy which attains even greater potentiality where, as here, the subject of the gift is a component of the residuary estate. * * * It is axiomatic that in the construction of doubtful clauses in a will, that interpretation is to be adopted which avoids a partial intestacy." (141 *N. J. Eq.* at *page* 175)

In view of the facts and circumstances that (1) all of the residuary legatees named by the testator are public or charitable organizations situate in the City of New York, (2) both Bellevue and Gouverneur Hospitals are large and well-known institutions that have served the public needs for generations, and (3) the stipulation that there are no other hospitals bearing the names "Bellevue" or "Gouverneur," I conclude that extrinsic evidence is unnecessary to determine that the testator intended the two hospitals in question to share in his residuary estate.

Thirdly, under the charter provisions of the City of New York, the hospitals under the jurisdiction of the Department of Hospitals (of which Bellevue and Gouverneur Hospitals are two) "shall be primarily for the care and treatment of the indigent poor of the City and for the protection of the public health." In fact, the public services rendered by Bellevue and Gouverneur Hospitals in general are rendered gratuitously as a public service although there are some cases in which the city does collect for such hospital services.

I think that there can be no question but that a bequest or gift to hospitals which render services gratuitously for the care and treatment of the indigent poor and for the protection of the public health fall within the description of charitable bequests or gifts. *Jackson v. Phillips*, 14 *Allen, Mass.*, 539, 556; *Mirinda v. King*, 11 *N. J. Super.* 165 (*App. Div.* 1951); *Wilber v. Owens*, 2 *N. J.* 167, 174 (1949);

*2A Bogert on Trusts and Trustees,* § 368; 6 *N. J. Practice, Clapp on Wills and Administration,* § 268.

And, of course, it is a well-established principle scarcely requiring citation of authorities that the courts favor charitable or public gifts and bequests.

Nor is it any objection to the validity of a charitable bequest that such gift to a municipally operated institution would, *pro tanto,* relieve from taxation both the rich and the poor. Indeed, the erection and maintenance of public buildings or works, or otherwise lessening the burdens of government, has long been recognized as the proper object of a charitable gift or bequest. *MacKenzie v. Trustees of Presbytery of Jersey City,* 67 *N. J. Eq.* 652 (*E. & A.* 1904); *New Jersey Title Guarantee and Trust Co. v. Smith,* 90 *N. J. Eq.* 386, 391 (*Ch.* 1919); *First National Bank and Trust Company of Summit v. Board of Chosen Freeholders of Union County, supra.*

Fourthly, the fact that neither Gouverneur nor Bellevue Hospitals are corporations but are merely activities and agencies of the City of New York, or branches of the Department of Hospitals of the City, constitutes no insuperable barrier to upholding the bequests.

In New Jersey gifts or bequests for charitable purposes to an organization which, though unincorporated, is a branch or subsidiary of a corporation, may be effectuated by awarding it to the corporation. *Goodell v. Union Association, etc.,* 29 *N. J. Eq.* 32 (*Ch.* 1878); *Hadden v. Dandy,* 51 *N. J. Eq.* 154, 159 (*Ch.* 1893), affirmed 51 *N. J. Eq.* 330 (*E. & A.* 1893); *New Jersey Title Guarantee and Trust Co. v. Smith,* 90 *N. J. Eq.* 386 (*Ch.* 1919); *New Jersey Title, etc., Co. v. American, etc., Red Cross,* 111 *N. J. Eq.* 12 (*Ch.* 1932); *First National Bank and Trust Company of Summit v. Board of Chosen Freeholders of Union County, supra; Y. W. C. A. of Camden v. Murrelle,* 141 *N. J. Eq.* 229 (*Ch.* 1948).

While the New York law apparently does not permit a bequest to an unincorporated organization (*Kernochan v. Farmers' Loan and Trust Co.,* 187 *App. Div.* 668, 175

*N. Y. S.* 831 (*App. Div.* 1919), affirmed without opinion 227 *N. Y.* 658, 126 *N. E.* 912 (*Ct. App.* 1920)), yet under the New York law a gift for charitable purposes to an organization which, though unincorporated, is a branch or subsidiary of a corporation, will be effectuated by awarding it to the corporation to be held in trust for the purposes of the gift. *Kernochan v. Farmers' Loan and Trust Co., supra; Prudential Insurance Co. of America v. New York Guild for Jewish Blind,* 252 *App. Div.* 493, 299 *N. Y. S.* 917 (*App. Div.* 1937).

In the case at bar, the proofs are clear that both Bellevue and Gouverneur Hospitals are agencies or branches of the Department of Hospitals of the City of New York and under the foregoing authorities, the bequest of a portion of the testator's residuary estate to the two hospitals in question will not be defeated because they are unincorporated but will be given effect by awarding the bequests to the City of New York, a municipal corporation, to be held in trust by the city for the purposes of the bequests.

Fifthly, I am of the opinion that the Attorney-General of the State of New Jersey is a necessary and indispensable party to this cause. The next-of-kin assert and argue strenuously that the bequests to Bellevue and Gouverneur Hospitals are invalid and that testator died intestate as to the shares attempted to be bequeathed to those two hospitals. The plaintiff trustees and the City of New York contend with equal vigor that the bequests are for charitable purposes and are valid. It is an ancient principle of law that in all suits where the subject matter is either wholly or in part money appropriated for charitable purposes, the Attorney-General, as representative of the public at large, is a necessary party. *Daniel's Chancery Pleading and Practice* (*3rd ed.*), *page* 128; *2A Bogert on Trusts and Trustees,* § 440; *6 N. J. Practice (Clapp on Wills and Administration),* § 626; *Lanning v. Commissioners of Public Instruction, etc.,* 63 *N. J. Eq.* 1 (*Ch.* 1902); *MacKenzie v. Trustees of Presbytery of Jersey City, supra,* 67 *N. J. Eq.* at *pages* 685 and 686; *Larkin v. Wikoff,* 75 *N. J. Eq.* 462 (*Ch.*

1909) ; *Lakatong Lodge, No.* 114 *of Quakertown, etc., v. Franklin Board of Education,* 84 *N. J. Eq.* 112, 116 (*Ch.* 1914) ; *White v. City of Newark,* 89 *N. J. Eq.* 5, 7 (*Ch.* 1918) ; *Christian v. Catholic Church, etc., of Paterson,* 91 *N. J. Eq.* 374 (*Ch.* 1920) ; *Bible Readers' Aid Society of Trenton v. Katzenbach, Attorney-General,* 97 *N. J. Eq.* 416 (*Ch.* 1925) ; *Trenton Savings Fund Society v. Wythman,* 104 *N. J. Eq.* 271, 272 (*Ch.* 1929) ; *Cinnaminson Library Ass'n v. Fidelity-Philadelphia, etc., Co.,* 141 *N. J. Eq.* 127 (*Ch.* 1948) ; *Y. W. C. A. of Camden v. Murrelle,* 141 *N. J. Eq.* 229, 237 (*Ch.* 1948).

However, inasmuch as the cause has been fully heard and argued without the Attorney-General having been joined as a party, an order may be entered joining the Attorney-General of the State as a party, process should be served upon him, and if he shall be satisfied that a correct conclusion has been reached, he may file a formal answer and submit to the judgment of the court without further hearing or proceedings. However, no judgment will be entered until the Attorney-General has been made a party and has been afforded an opportunity to be heard. *Y. W. C. A. of Camden v. Murrelle, supra.*

With respect to the plaintiffs' account as trustees under paragraph "Ninth (a)" of the testator's will, approval of which is sought in the second count of the complaint, it is noted that the parties have stipulated that the account as filed by the trustees is correct and proper, subject only to the questions raised by the answer of the next-of-kin, including the counterclaim against the plaintiffs and the cross-claim against the City of New York, both dealing with the payment on account of $30,000 to each of the two hospitals in question.

The account will be approved as filed.

The parties have agreed that no application shall be made to the court for the allowance of commissions to the trustees or for the allowance of counsel fees without proper notice in advance to counsel for all parties concerned in this suit. Accordingly, the questions of the allowance of com-

missions to the trustees and of the allowance of counsel fees will only be considered on notice. See *R. R.* 4:106–3, 4:107–1 and 4:107–3.

In conclusion:

(1) The bequests contained in testator's will of portions of his residuary estate to Bellevue Hospital (for its tuberculosis clinic) and to Gouverneur Hospital will be sustained as valid and will be given effect by awarding the same to the City of New York, a municipal corporation, in trust for the uses of the hospitals.

(2) No judgment will be entered in this cause until the Attorney-General of the State of New Jersey shall have been brought in as a party to this suit and shall have been afforded an opportunity to be heard.

(3) The account as filed, including the payments on account of $30,000 made by the trustees to Bellevue Hospital and a like amount to Gouverneur Hospital, will be allowed and approved.

(4) No consideration will be given to the allowance of trustees' commissions or counsel fees to counsel for the trustees until proper notice shall have been given to the other parties in interest, or to their respective counsel.